[Civ. No. 16337.   First Dist., Div. One.   June 15, 1955.]

HELEN JAGOE MATTOS, as Administratrix, etc., Respondent, v. MIMA KIRBY et al., Appellants.

Duggan, Smith & Lawlor for Appellants.

Raymond A. Ferrario, Young & Whitton and Albert K. Whitton for Respondent.

BRAY, J.—In an action to set aside a deed, a deed of trust, and to recover rental value of premises described therein, plaintiff recovered judgment setting aside said instruments and awarding her $2,030. Defendants Kirby and de Mello appeal.

## QUESTIONS PRESENTED

1. Insufficiency of the evidence to support the findings (a) that the deed's grantor was mentally incapable of understanding the transaction; (b) that a confidential relationship existed between the grantor and the grantee,* and (c) that there was no consideration for the deed.

2. That the court's findings are inconsistent.

## EVIDENCE

At the time of the execution of the deed, Mrs. Fabiano, a woman 83 years of age, had lived alone for many years in her Emeryville home. Other than a small pension, her sole income was $35 per month rental from a downstairs apartment. From June or July, 1951, to about October 1st, Mrs. Ustice, a practical nurse, cared for her. Late in September, defendant Kirby, who had known Mrs. Fabiano since about 1935, commenced visiting the latter. About October 1st, defendant moved into the house, discharged Mrs. Ustice, and assumed care of Mrs. Fabiano, which she continued until Mrs. Fabiano's death October 15th. October 2d the deed was executed.

Concerning deceased's mental condition and the execution of the deed the testimony was as follows: Mrs. Ustice testified that when she first came to the home deceased was in bed and hardly able to move. She did not leave the bed to attend to her wants. A Mrs. Earl came to see deceased each morning. Deceased made salary arrangements with the witness, although Mrs. Earl also offered to pay her. Deceased's mental condition got worse. She could not carry on a rational conversation. Although her brother had been dead a year or two, deceased would tell the witness that he had been in to see her that day. Deceased was not of sound mind. She did not know where

---

*The action arises out of the execution of a deed from plaintiff's intestate, Mrs. Fabiano, to defendant Mima Kirby. Defendants Oakland Title Insurance & Guaranty Co., a corporation, and Alex de Mello, are joined because of the later execution of a deed of trust by defendant Kirby in which the title company is trustee and de Mello is beneficiary, to secure a loan from de Mello to Kirby. Defendant de Mello was found to have no knowledge of the Fabiano-Kirby transaction, but because the deed, Fabiano to Kirby, was void, Kirby had no title to convey by the deed of trust.

anything was. Defendant discharged the witness. Deceased said nothing.

Mrs. Trestler, deceased's great niece, visited her periodically, the last time being approximately six weeks or a month prior to her death. Deceased would only recognize her when the witness told deceased who she was. Deceased would not remember that the witness had been there before. On one occasion the witness left deceased for about 15 minutes. On returning deceased did not know the witness had been there. The witness showed deceased pictures of the witnesses's grandfather, grandmother, uncle and several friends of deceased's. Deceased said she never knew them. Deceased imagined there were two people in the house who were going to take her property away. About a year before she died, deceased offered to give the witness her property if the witness would live with her. Her mental condition got worse. Deceased was not of sound mind. Deceased was very feeble and never sat up. In the witness's opinion deceased could not write her name. Deceased made the witness promise she would never let anyone take her house away from her.

Defendant Kirby testified that she was an old and trusted friend of deceased's. The latter was of sound mind at the time of making the deed and at all times. On October 12th, when Dr. Hart came, deceased's mental and physical condition was the same as when she signed the deed. Deceased recognized him when he came in. Defendant went to the courthouse and got a description of deceased's property, took it to a realtor with whom she had done business before and had him draw the deed. She brought the deed to the house. Deceased signed it. Later the realtor put revenue stamps on the deed. The witness did not discharge Mrs. Ustice. Deceased did. Deceased told defendant that whoever stayed with her when she had her last days in the home was the one who would get her property. She had burial money in the safe deposit box to which Mrs. Earl had the key.

Dr. Hart treated deceased off and on from 1946 until he last saw her October 12, 1951. She was suffering from lung tuberculosis, and was then in a terminal condition. He saw that she was going to die. She was very weak and fragile. She was semicomatose to the point he did not arouse her. She was mentally involved. He tried to carry on a conversation with her but he could not because she was semicomatose. She made no reply to anything he stated to her. Her condition had been developing over a period of some time. She was

not of sound mind on the 12th and most likely was in the same mental condition 10 days before. She was mentally involved, disturbed and semiconscious. While he could not state whether deceased on October 2d was sane or insane (he had never determined any trace of insanity) he would say that in all probability she was mentally involved. On October 12th she was not mentally competent.

Mrs. Di Rienzo, called by defendants, testified that she was employed by the realtor who drew the deed. Defendant drove her to deceased's home. Defendant told deceased that this was the "little girl" who was to notarize the deed. The witness asked deceased if she knew what the paper was. Deceased said, "Yes, I am going to give Fifty my house." (Fifty was defendant's nickname.) Deceased was conscious, mentally alert, talked coherently and answered all questions. The witness showed deceased where to sign the deed and she signed it. Afterwards they talked for about half an hour. Deceased spoke with a strong voice. Deceased's hand was not held during the signing.

Mrs. Brady, the tenant in the downstairs apartment, visited with deceased in late September and early October. Deceased was conscious, mentally sane and alert. The witness saw her on three or four days before her death and she seemed to be all right then. On that last visit, deceased spoke about the witness's children and their visits in earlier days.

1. *Sufficiency of Evidence.*

(a) Mental Incapacity.

While there is a conflict in the evidence upon this subject, the resolving of that conflict is a matter for the trial court. There is substantial evidence to support the court's finding. Mrs. Ustice and Mrs. Trestler testified positively that in their opinion deceased was of unsound mind. Additionally, Mrs. Ustice testified that deceased could not carry on a rational conversation, spoke of a brother who was dead visiting her. Mrs. Trestler testified that deceased was unable to recognize her or pictures of the immediate family; that deceased imagined someone was in the house trying to take her property from her. Dr. Hart, who had treated deceased for some time, stated that on October 12th (10 days after the execution of the deed) she was not of sound mind and most likely was in that condition on October 2d. Defendant testified that at the time of the execution of the deed deceased was in the same mental and physical condition as when Dr. Hart saw her October 12th. If so, then if Dr. Hart is to be believed

(and the trial court believed him) deceased could not have been of sound mind when she signed the deed. True, defendant meant by her testimony that deceased was of sound mind on both dates, but the court did not have to believe all of her testimony. It had the right to believe her statement that deceased's condition was the same on both dates, but disbelieve her statement as to what that condition was. Defendant testified that on October 12th deceased recognized Dr. Hart and carried on a conversation with him. Dr. Hart's testimony was to the contrary.

It does not necessarily follow, as contended by defendants, that a signature cannot be obtained from a person in a semicomatose slumber. The character of the signature here was a circumstance to be weighed by the trial court along with the other circumstances in the case.

Defendants, in addition to the testimony of their witnesses, have the benefit of the presumption of sanity (see *Estate of Perkins*, 195 Cal. 699 [235 P. 45]). However, the presumption is a rebuttable one, and like the testimony of defendants' witnesses, was overcome when the trial court believed plaintiff's witnesses.

This case differs from *Estate of Dunne*, 130 Cal.App.2d 216 [278 P.2d 733], where it was held that the evidence of incompetency was insufficient primarily in that there all that was proved was that the testator had delusions which did not bear upon his testamentary capacity. In our case the tests of mental incompetency stated in the Dunne case (p. 220) were met. Here there was evidence that because of her mental condition deceased did not have mental capacity ''(1) to understand the nature of his act; (2) to understand and recollect the nature and situation of his property . . .'' Coupling Dr. Hart's testimony with defendant Kirby's, it would appear that Mrs. Fabiano was in a condition in which she could not understand what she was signing or the nature and situation of her property. ''(3) to remember and understand his relations to the persons having claims upon his bounty, and whose interests would be affected . . .'' Mrs. Fabiano could not remember who her relatives were.

As to the defendant de Mello,—while he had no knowledge of the circumstances of the making of the deed and parted with $2,000 for his deed of trust, defendant Kirby had no title to convey to him, as the deed to her, being made by a person entirely without understanding, was void. (See Civ. Code, § 38; *Maionchi* v. *Nicholini*, 1 Cal.App. 690 [82 P.

1052] ; *Trout* v. *Taylor*, 220 Cal. 652 [32 P.2d 968] ; *Jacks* v. *Estee*, 139 Cal. 507 [73 P. 247].)

(b) Confidential Relationship.

Plaintiff practically concedes that the finding of a confidential relationship between the deceased and defendant and of undue influence of the latter is unsupported.

(c) Consideration.

The court found that defendant Kirby gave no consideration for the deed. She testified that it was given in exchange for her promise to take care of the grantor for the balance of her life. She did take care of Mrs. Fabiano for the 13 days elapsing between the making of the deed and her death. ■ A finding of lack of consideration is not necessary where a deed is made by a person without understanding.

As the supported finding of mental incompetency is sufficient to support the judgment, we deem it unnecessary to discuss the findings further. ■ One clear, sustained and sufficient finding which supports a judgment is all that is needed, even though there be other unsupported, inconclusive findings. (*Kreisa* v. *Stoddard*, 127 Cal.App.2d 627, 633 [274 P.2d 164].)

2. *Inconsistency.*

■ We can see no inconsistency between a finding of mental incompetency and one of confidential relationship and undue influence. The latter finding does not imply mental alertness in the person influenced. Actually it is easier to influence a mentally incompetent person than a competent one. While the court erred in making the latter finding, there is no inconsistency involved.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.