[Civ. No. 8704.   Third Dist.   May 2, 1956.]

ALTA CHURCH et al., Appellants, v. CAPITAL FREIGHT LINES et al., Respondents.

Alfred E. Frazier and L. C. Smith for Appellants.

Fitzwilliam & Memering for Respondents.

PEEK, J.—This is an appeal by plaintiffs from a judgment entered pursuant to a jury verdict in favor of defendants in an action for personal injuries. Plaintiffs' sole contention is that they were denied their right to a trial before a jury of 12 competent persons in that Norman Sindel, the foreman of the jury, was mentally incompetent at the time of trial.

The record shows that the verdict and judgment were entered on March 5; that on March 16, 11 days thereafter, Sindel's wife filed her petition to have him declared to be a mentally ill person; and that on March 18 he was declared so to be and was committed to Agnews State Hospital. On March 17, plaintiffs filed their notice of motion for a new trial, stating the same would be made on affidavits and all of the records and files in said action. On April 30 they filed their notice of motion for mistrial. Although that motion was noticed for May 10, the record shows that the date of hearing thereon was May 6, and the court, in its order denying the same, states: "Motion for mistrial was made, together with motion for new trial. The grounds were that one of the jurors was mentally incompetent and hence there was a jury of eleven persons without the consent of the parties." The order was filed on May 24. ■ Since no ruling was made on plaintiffs' motion for a new trial, it will

248

be deemed to have been denied by operation of law. (Code Civ. Proc., § 660.)

Although we have been referred to no cases in this state directly in point, surely there can be no question but that the right to a trial before mentally competent jurors is as fundamental as the right to trial before unbiased and unprejudiced jurors which our courts have held to be an " 'inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' " (*People* v. *Galloway,* 202 Cal. 81, 92 [259 P. 332].) In amplification of this constitutional right, the Legislature by statute has determined who are competent (Code Civ. Proc., § 198) and who are not competent (Code Civ. Proc., § 199) to act as jurors. By such statutory provisions a person not in "possession of his natural faculties" may be disqualified to serve as a juror. But that fact would not necessarily be disclosed under ordinary questioning on *voir dire*. Contrary to defendants' argument, the very nature of the affliction would preclude the application of any rule predicated upon rationalization such as the intentional or unintentional failure to disclose one's disqualification. Therefore in the present case the court properly considered the affidavits of the jurors, not for the purpose of impeaching the verdict, but to assist it in determining the qualifications of Sindel to serve as a juror. (See *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417 [274 P.2d 53].)

The presumption is always that a person is sane; therefore one who claims that a person is insane at a particular time has the burden of establishing that fact by a preponderance of the evidence. (*Mattos* v. *Kirby,* 133 Cal. App.2d 649, 652 [285 P.2d 56].) Furthermore, although proof of subsequent insanity may have some evidentiary effect as to prior mental illness, it will not create nor carry a presumption of its past existence. (*Estate of Perkins,* 195 Cal. 699, 703 [235 P. 45]; see also 27 Cal.Jur.2d, § 10, p. 332.)

Thus in the present case the burden was cast upon plaintiffs to establish by a preponderance of the evidence that Sindel was in fact mentally incompetent at the time of the trial. The affidavits submitted by plaintiffs in support of their motions consisted of four by jurors, three of which were addressed primarily to the vote of the jurors in the juryroom which they aver was 9 to 3 in favor of defendants, as contrasted with the vote of 11 to 1 when the jury was polled, and it is agreed by all that Sindel consistently voted for the

defendants. The affidavit of the fourth juror, in addition to referring to the vote as noted, also went into considerable detail concerning the activities of Sindel in the juryroom; that is that he was most emphatic and outspoken in his bias toward plaintiffs, their witnesses and their case, and was most officious in his capacity as jury foreman. Additionally each of the plaintiffs filed affidavits to the effect that they had no previous acquaintanceship with Sindel nor any knowledge of his mental condition. Affidavits were also filed by plaintiffs' attorneys, one in substantially the same phraseology as plaintiffs'—the other that although he knew Sindel by sight, he had no knowledge of his mental condition until he read a newspaper account of his commitment. An affidavit was also filed by one of the two doctors appointed by the court to examine Sindel prior to his commitment. The pertinent portions of his affidavit were that, based upon his observation and examination of Sindel and the information set forth in the affidavits submitted by plaintiffs, it was his opinion that during the time of the trial Sindel was ''suffering from dementia praecox, paranoid type,'' and that he was not, during that period, ''in the possession of his natural faculties.'' It was the doctor's further opinion that the condition which he observed on the date of his examination could not ''have developed in a shorter period of time than three or four weeks.'' He further stated that his mental condition during that time was one ''which would prevent the weighing of testimony and the arriving at such a fair opinion as would be expected of a normal individual; that the probabilities are that one side or the other in any litigation in which said party was a juror would be prejudiced by reason of the above-described mental condition.''

The affidavits filed by defendants in opposition include six by jurors which were substantially to the same effect as those filed by plaintiffs concerning the votes taken by the jury, but which denied the notice of anything out of the ordinary concerning Sindel. A further affidavit was filed by Sindel's wife wherein she averred that except for restlessness at night during the time of the trial, she had noticed nothing different in his conduct; that on the third day following the trial, he mentioned a conversation with a person he had met, that seemed to upset him; that on March 13th, or eight days after the trial, he suddenly became very excited and a doctor was called. Defendants' counsel likewise filed an affidavit which was to the effect that he had noted nothing during

the course of the trial which would have caused him to question Mr. Sindel's mental capacity. Defendants also filed an affidavit by a psychiatrist who did not personally examine Sindel but based his opinion on the record of the case and the affidavits of the jurors. His conclusion was that conceding that on the day of his commitment Sindel was undoubtedly suffering from "some form of mental illness," it could not be said with "reasonable medical certainty that the condition of mental illness found to exist in said Norman Sindel on March 17, 1954, had existed for three or four weeks, or for any greater or lesser period." On the contrary, he said that it was medically certain that the mental illness from which Sindel was suffering might "develop and manifest itself in one day, one week, one month, one year, or many years." The psychiatrist further stated, "This is a disease that the symptoms are not particularly related to any time factors. The disease may lie dormant and then appear within hours." He further stated that in the absence of any evidence of unusual conduct on the part of Sindel during the time of the trial or prior thereto, his subsequent mental breakdown, although it might have been induced by the strain of serving as a juror, actually occurred subsequent to the conclusion of the trial. He concluded his affidavit with the following statement:

"It is my opinion the conduct of said Norman Sindel during the period March 2, 1954, through March 5, 1954, as related in the affidavits of the jurors above mentioned was consistent with that of a normal, mentally well person.

"Based upon all the evidence available to me at this time, it is my strong belief and opinion that this man was rational and in complete possession of his natural faculties during the period March 2, 1954, through March 5, 1954."

Upon the conflicting evidence so presented the trial court concluded that Sindel was qualified to serve as a juror. Although a different conclusion by the trial court would have been equally well-founded, nevertheless that is not to say that upon the conflicting evidence presented, the trial judge abused his discretion in following the conclusion of defendants' doctor rather than the evidence produced by plaintiffs.

It would appear wholly unnecessary to discuss in detail plaintiffs' further contention relative to the failure of defendants to submit any evidence in opposition to plaintiffs' motion for a mistrial, nor does it seem necessary to discuss the propriety of plaintiffs' motion for a mistrial. Suffice it

to say that the record shows, and it is not contradicted, that both plaintiffs' motion for a new trial and their motion for a mistrial were heard at the same time. Hence in the absence of any showing to the contrary we assume that all evidence (obviously the same in each matter) was before the court and was considered by it in reaching its conclusion.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.