Filed 11/6/14  Rodriguez v. Windsor Care Center Nat. City CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ESTHER RODRIGUEZ, | D065014 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2013-00043184-CU-PO-CTL) |
| WINDSOR CARE CENTER NATIONAL CITY, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Motion to dismiss appeal denied; order affirmed.

Giovanniello Law Group and Alexander F. Giovanniello, Jeremy R. Hoopes, Danielle M. VandenBos for Defendants and Appellants.

Morris, Sullivan & Lemkul, and William A. Lemkul, Matthew J. Yarling; Andrew A. Thompson for Plaintiff and Respondent.

Defendants and appellants Windsor Care Center National City, Inc. and Windsor Care Center National City, Ltd. (collectively Windsor) appeal from an order denying their petition to compel plaintiff and respondent Esther Rodriguez to contractual

arbitration under a Resident-Facility Arbitration Agreement (arbitration agreement) that Rodriguez had signed upon admission to the Windsor Gardens Convalescent Center of San Diego (Center), a skilled nursing facility. The trial court ruled the arbitration agreement unenforceable on grounds it was procedurally and substantively unconscionable and Rodriguez had insufficient mental capacity to enter into it. Windsor contends the arbitration agreement is valid and enforceable under state and federal law and Rodriguez has no evidence of any generally applicable contract defense on which to challenge its validity. Windsor asks this court to stay the trial until completion of the arbitration.

Rodriguez has moved to dismiss the appeal for lack of an adequate record. On the merits, she contends, among other arguments, there is sufficient evidence to support the trial court's ruling as to unconscionability, and its finding she lacked mental capacity to contract. We deny Rodriguez's motion to dismiss the appeal. On the merits, we conclude substantial evidence supports the trial court's ruling that Rodriguez did not have the legal capacity to enter into the arbitration agreement.[1] Accordingly, we affirm the order.

---

[1] Given our conclusion, we need not address the issue of unconscionability, or Rodriguez's additional arguments that the arbitration agreement violates Health and Safety Code section 1599.65 and is thus illegal; her causes of action for elder abuse (Elder Abuse and Dependent Adult Civil Protection Act; Welf. & Inst. Code, §§ 15600 et seq.) and violation of the Patient's Bill of Rights (Cal. Code Regs., tit. 22, § 72527; Health & Saf. Code, § 1430) are not arbitrable; arbitration would give rise to the possibility of inconsistent rulings; and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) is inapplicable.

2

FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2012, then 80-year-old Rodriguez was admitted to Center for rehabilitation after treatment for a stroke. Rodriguez speaks only Spanish, cannot read English, and cannot read or understand legal agreements printed in English. She was heavily medicated on her admission due to her stroke. Rodriguez's daughter, Dolores Salazar, who was listed on Rodriguez's admission record as the "responsible party," was present that day to complete intake paperwork. Salazar reviewed the paperwork with her mother to ensure she understood everything, and they reviewed and signed various documents, but not an arbitration agreement. Given that Rodriguez was a Spanish-speaker, Rodriguez relied on Salazar to review and explain the admission documents.

Three days later, Luz Vargas, then Center's admissions coordinator, assisted Rodriguez in completing admissions paperwork, including a two-page arbitration agreement written in English. In part, the arbitration agreement provides that "any dispute as to medical malpractice" and "any dispute between Resident and Facility, including any action for injury or death arising from negligence, intentional tort and/or statutory causes of action . . . but not including California Health & Safety Code [section] 1430 . . . will be determined by submission to arbitration as provided by California law . . . ." (Emphasis omitted.) It further provides that both parties agree that any arbitration "will proceed according to the Medical Arbitration Rules of the California Hospital Association—California Medical Association (copies available at Facility Admissions Office)."

Salazar was not present when Rodriguez signed the arbitration agreement. Center never advised Salazar that it would ask her mother to sign such an agreement, and Salazar never saw or signed the agreement. Vargas explained the arbitration agreement to Rodriguez, who then signed it. Vargas could not recall Rodriguez asking any questions regarding the agreement.

On August 30, 2012, a Center staff member filled out a form entitled "Initial Social Service Assessment" for Rodriguez.[2] In a section for "[c]ognitive [s]tatus," the staff member checked boxes indicating that Rodriguez was alert and oriented to herself and others, had no delirium, made herself understood, did not have any "acute onset of mental status change," and was "[a]ble to understand." However, in an area of the form seeking a description of Rodriguez's "[d]ecision making skills," the staff member wrote that Rodriguez was "unable to make [d]ecisions." Rodriguez left Center in November 2012.

In April 2013, Rodriguez sued Windsor, alleging she suffered injuries as a result of Windsor's improper care and treatment. In June 2013, Windsor's counsel requested that Rodriguez submit to alternative dispute resolution under the arbitration agreement. When Rodriguez did not respond, Windsor moved to compel contractual arbitration and to stay the superior court action. In its motion, Windsor argued the arbitration agreement was enforceable as to all parties, and complied with Code of Civil Procedure sections

---

[2] Rodriguez's attorney purported to authenticate this form via his declaration. But Windsor did not object, and the trial court considered the document in its ruling when it noted that on August 30, 2012, staff observed Rodriguez was unable to made decisions.

4

1281 and 1295, which applied to claims for medical malpractice. It further argued the arbitration agreement was enforceable under the Federal Arbitration Act.

Windsor supported its motion with evidence that it is a skilled nursing facility, as well as Vargas's declaration. In part, Vargas, who averred she was fully familiar with Center's admissions procedures, stated it was her custom and practice to explain the significance and effect of each document prior to signature, and to answer any questions asked by the patients and their representatives. She stated she let each resident know the arbitration agreement was optional and not a condition of admission, and she clarified that executing it would require all claims relating to the patient's care and treatment to be submitted to arbitration and would waive the right to a jury trial. Vargas stated: "It is my belief that Esther Rodriguez signed the [arbitration agreement] voluntarily and understood its effects. It is my custom and practice to observe the signatory's behavior for any indications of incapacity or incompetency. At the time she signed the [arbitration agreement], and for the duration of our August 27, 2012 meeting, . . . Rodriguez was alert and oriented, and fully capable of making health care decisions."

In opposition, Rodriguez argued, among other things, that no agreement was formed because she could not understand it and lacked capacity to enter into it, and it was both procedurally and substantively unconscionable. She submitted Salazar's declaration, in which Salazar stated her mother was heavily medicated upon her admission to Center, and "as of August 27, 2012, she was not herself in terms of mental acuity." Salazar stated that because her mother was Spanish speaking and "in a compromised mental state following her stroke," her mother relied on her to review and explain the documents that

5

needed to be filled out and signed upon admission. Salazar averred that Rodriguez "certainly cannot read or understand legal agreements printed in English."

In reply, Windsor argued Rodriguez executed the arbitration agreement voluntarily and understood its effects. It provided an additional declaration from Vargas in which she stated she was fluent in both English and Spanish, and had explained the entire arbitration agreement to Rodriguez in Spanish. Vargas averred that Rodriguez was alert and oriented, and "fully capable of making health care decisions at the time she signed the [arbitration agreement]."

The trial court ruled the arbitration agreement was unenforceable on grounds it was both procedurally and substantively unconscionable. Finding "the contract was not free to be negotiated" and was presented to Rodriguez three days after admission without her daughter present, the court stated: "[Windsor] listed plaintiff's daughter . . . as the 'Responsible Party' on the intake forms completed upon admission on August 24, 2012. Defendants had the option to indicate 'Self' (i.e. plaintiff) as the responsible party on the form. Therefore, defendants allowed plaintiff to sign the document without even consulting the party responsible for plaintiff. Procedural unconscionability would have been avoided had defendants allowed plaintiff to consult with [Salazar] before she signed the arbitration agreement, or presented it to [Salazar] as the designated 'responsible party.' " Noting that staff had documented on August 30, 2012, that Rodriguez was unable to make decisions, the court reasoned: "Plaintiff, being the weaker party, lacked a meaningful choice, and according to defendants' own assessment three days later, lacked the ability to make any type of choice at all. There appears to be a clear inequality in

6

bargaining power in connection with this agreement. It would be natural that Vargas, as an employee of defendants, would minimize the rights being given up and would seek to persuade plaintiff, perhaps subtly, that signing the arbitration agreement was not a big deal."

As for substantive unconscionability, the court ruled: "The agreement is essentially one-sided in that it requires all disputes sounding in medical malpractice to be determined by submission to arbitration. Additionally, Article 3 of the Arbitration Agreement stated that 'Resident and Facility agree that any arbitration pursuant to this agreement will proceed according to the Medical Arbitration Rules of the California Hospital Association—California Medical Association (copies available at Facility Admissions Office.)' Defendants do not allege that copies were ever furnished to plaintiff, nor were they explained."

The court additionally ruled: "The court . . . questions the mental capacity of plaintiff at the time of the signing of the [arbitration] agreement. 'Lack of mental capacity to enter into the entire contract is a defense to enforcement of the arbitration clause.' "

Windsor filed this appeal from the order.

DISCUSSION

I. *Rodriguez's Motion to Dismiss Windsor's Appeal*

Rodriguez has moved to dismiss the appeal for Windsor's asserted failure to provide an adequate record, specifically, a reporter's transcript of the hearing on Windsor's motion to compel contractual arbitration. She points out the parties presented

7

conflicting declarations and there was extensive oral argument as well as questioning of counsel by the trial court, after which the trial court made findings of fact on disputed evidence, which this court must review for substantial evidence.  Though Rodriguez acknowledges no party presented live witness testimony at the hearing, she maintains we cannot reverse the judgment without a reporter's transcript because, based on *Brockway v. Heilman* (1967) 250 Cal.App.2d 807, without such a transcript, " 'the sufficiency of the evidence to support the findings is not open to question.' "[3]

Windsor points out in opposition that all of the evidence before the trial court is included in the clerk's transcript.  It maintains that because the relevant facts are undisputed, this court must decide the issue of unconscionability as a matter of law.

The state of the appellate record does not prevent us from considering Windsor's appeal.  Rodriguez's argument fails to appreciate that argument by counsel is not evidence, and we do not consider it on a substantial evidence review no matter how extensive or vigorously counsel argued at the hearing.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11; *Villacorta v. Cemex Cement, Inc.* (2013) 221 Cal.App.4th 1425, 1433.)

---

[3]    Rodriguez's authorities on these points are inapposite.  Her primary authority, *Foust v. San Jose Const. Co., Inc.* (2011) 198 Cal.App.4th 181, involved an appellant's failure to provide a reporter's transcript of a *bench trial*, where the parties presented witness testimony and introduced exhibits, and the appellant's claim on appeal was that his trial testimony showed he had never agreed to a modification in his compensation. (*Id*. at pp. 185-186.)  Under those circumstances, the appellate court took the facts from the trial court's statement of decision but, in the absence of a reporter's transcript or the exhibits presented at trial, was unable to undertake a meaningful review of his claim, and would not reevaluate the trial court's determination that the appellant was not credible. (*Id*. at pp. 185, 187, 188.)  Similarly, *Brockway v. Heilman*, *supra*, 250 Cal.App.2d 807 involves an unreported bench trial and an appeal on a judgment roll.  (*Id*. at p. 809.)

Though Rodriguez characterizes counsels' responses to the court's questions as "conflicting oral evidence" presented without evidentiary objection, she provides no authority for the proposition that such unsworn statements of counsel, when elicited by the court, constitute admissible evidence. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1509 [appellate court can deem a contention unsupported by argument and legal authority as waived].) Nor does Rodriguez explain how the information provided by counsel (the fact that Salazar lived in close proximity to the Center) bears on the issues at hand, even assuming we may take counsel's statements as evidence. We see no indication that the trial court treated or relied upon this information in its ruling.

Further, Rodriguez herself points out that reviewing courts may assess substantial evidence to support a trial court's findings where, as here, the sole evidence consists of written declarations. (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479 [appellate court should defer to the trial court's factual determinations when the evidence is in conflict, whether the evidence consists of oral testimony or declarations]; *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1441 [same]; *In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 492 ["With respect to purely factual findings, we will defer to the trial court's assessment of the parties' credibility, even though the determination was made on declarations rather than live testimony. [Citations.] ' "In a matter in which an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contentions of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom." ' "].)

9

Thus, to the extent the evidence presented via the written declarations conflicts—and we agree with Rodriguez that it does in material respects relating to Rodriguez's mental state and ability to made decisions on August 27, 2012—we accept the evidence supporting the trial court's findings, draw inferences from other evidence in Rodriguez's favor, and decide whether it constitutes substantial evidence to support the court's factual findings, including those underlying its findings of both procedural and substantive unconscionability. Because the record before us contains all declarations and documentary evidence in support of and in opposition to the motion, as well as the minute order reflecting the trial court's reasoning and factual findings, the absence of a reporter's transcript of counsel's oral argument on the motion does not render the record inadequate for substantial evidence review.

## II. *Mental Capacity to Contract*

In reaching its ruling, the trial court questioned Rodriguez's mental capacity to enter into the arbitration agreement. It observed that Rodriguez's "capacity to understand" was at issue, and made a factual finding that that Rodriguez "lacked the ability to make any type of choice at all." The trial court thus implicitly, if not expressly, found that Rodriguez was not mentally capable of contracting as an independent reason to deny the petition to compel arbitration. Rodriguez contends substantial evidence supports that finding, stating it shows she was unable to make decisions, had suffered a stroke ten days earlier, and had just been discharged from acute care treatment. She points to her daughter's declaration that she (Rodriguez) was "not herself" in terms of mental acuity at the time she signed the arbitration agreement due to her stroke and

10

medications. Rodriguez also points to the fact that the arbitration agreement was an English language document, and was presented to her without her daughter present to translate and explain it.

Under California law, persons of unsound mind are not capable of contracting. (Civ. Code, § 1556.) Whether a person has an "unsound mind" is related to the concept of consent because the parties' consent to the contract must be free. (Civ. Code, § 1565.) The consent essential to a contract's existence cannot be given freely by a person unless he or she is "endowed with such a degree of reason and judgment as will enable him or her to comprehend the subject of negotiation." (*Jacks v. Estee* (1903) 139 Cal. 507, 512-513.)

The capacity of a person of unsound mind to contract is governed by specific provisions of the Civil Code. (Civ. Code, § 1557, subd. (b).) Under Civil Code section 38, a "person entirely without understanding has no power to make a contract of any kind . . . ." The Civil Code additionally provides that a "contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission . . . ." (Civ. Code, § 39, subd. (a); see *Smalley v. Baker* (1968) 262 Cal.App.2d 824, 832 [party may seek to be relieved from a contract if "when he entered into the contract, he was not mentally competent to deal with the subject before him with a full understanding of his rights, the test being . . . whether he understood the nature, purpose and effect of what he did"], disapproved on other grounds in *Weiner v. Fleischman* (1991) 54 Cal.3d 476, 485-486.)

11

The Civil Code further sets forth a rebuttable presumption that a person is of unsound mind if it is shown the person is "substantially unable to manage his or her own financial resources or resist fraud or undue influence." (Civ. Code, § 39, subd. (b).) Otherwise, the presumption is that a person is mentally competent, but it is rebuttable, and thus one who claims he or she is not competent at a particular time has the burden of establishing that fact by a preponderance of the evidence. (*Church v. Capital Freight Lines* (1956) 141 Cal.App.2d 246, 248; *Mattos v. Kirby* (1955) 133 Cal.App.2d 649, 652-653; see Prob. Code, § 810, subd. (a) [establishing a rebuttable presumption that all persons have the capacity to make decisions and to be responsible for their acts or decisions].) Mental incompetency does not require long-lasting or complete incapacitation, and it may exist when a party takes " 'unfair advantage of another's weakness of mind' " arising from such factors as "lack of full vigor due to age, physical condition, emotional anguish, or a combination of such factors." (*Smalley v. Baker*, *supra*, 262 Cal.App.2d at pp. 834-835.)

When there is a conflict in the evidence on the issue of mental capacity, the trial court must resolve it as a question of fact, and we assess whether its finding is supported by substantial evidence. (*Mattos v. Kirby*, *supra*, 133 Cal.App.2d at p. 652; see *Church v. Capital Freight Lines*, *supra*, 141 Cal.App.2d at p. 250.)

We hold Rodriguez's evidence supports a conclusion that Rodriguez, at the time Vargas presented the arbitration agreement to her, was substantially unable to manage her financial resources and resist fraud or undue influence. Accepting the evidence supporting the court's order and drawing all inferences in Rodriguez's favor, the evidence

12

shows that though Rodriguez was oriented and able to understand generally, she had suffered a recent stroke and was heavily medicated upon admission as a result, requiring her daughter to be present to explain and translate documents to her. Three days after signing the arbitration agreement, Rodriguez was determined by Center staff to be incapable of making decisions. Rodriguez's daughter stated that "as of August 27, 2012, [Rodriguez] was not herself in terms of mental acuity" and was in a "compromised mental state following her stroke . . . ." There is no basis in the evidence to conclude Rodriguez's decision-making abilities were any different three days earlier than August 30, 2012, when the staff member made her observation on the social service assessment form. We conclude a person who is generally unable to make decisions is necessarily incapable of making *financial* decisions, and we infer from the evidence as a whole that Rodriguez, in her current mental state without her daughter present during this time, would be unable to resist fraud or undue influence.

The evidence thus raised a rebuttable presumption that Rodriguez was mentally incapable of entering into the arbitration agreement. (Civ. Code, § 39.) And, we cannot conclude Windsor presented evidence rebutting that presumption. That is because the trial court rejected the credibility of Windsor's sole witness on the issue, Vargas, when it found she had a motive to minimize Rodriguez's rights and seek to persuade Rodriguez to sign the agreement. "[I]t is thoroughly settled in California that the credibility of a witness and the weight to be given to his testimony are questions directed to the trial judge and . . . under proper circumstances he may reject all or any part of the testimony of any witness if he believes such testimony to be untrue." (*In re McConkey's Estate*

13

(1939) 33 Cal.App.2d 554, 562.) We will not disturb the court's credibility determination. Further, the evidence was in conflict as to Rodriguez's ability to make decisions and her mental competency, and it was for the trial court to resolve that conflict. (*Mattos v. Kirby*, *supra*, 133 Cal.App.2d at p. 652; see *Church v. Capital Freight Lines*, *supra*, 141 Cal.App.2d at p. 250.) Thus, the evidence supports the trial court's conclusion that Rodriguez lacked sufficient mental state or capacity to contract.

None of Windsor's arguments to the contrary persuade us otherwise. Windsor argues, "At the time Ms. Rodriguez executed the [arbitration agreement] she was competent, coherent and able to make her own medical decisions." It asserts, "Ms. Rodriguez was making her own decisions and did not have a power of attorney." Finally, it argues, "Per Respondent's operative complaint, Ms. Rodriguez 'retained a high level of cognitive functioning' such that she could make her own decisions." For these propositions, it cites not to any evidence, but to its own reply points and authorities submitted for its motion to compel arbitration. Argument of counsel in a brief is not evidence. (*In re Marriage of Duris & Urbany* (2011) 193 Cal.App.4th 510, 515 ["allegations of a brief are not evidence"]; *Villacorta v. Cemex Cement, Inc.*, *supra*, 221 Cal.App.4th at p. 1433.) Further, Windsor does not explain with legal argument and authority how a mere allegation of Rodriguez's complaint—which is not in the record before us—amounts to evidence, much less substantial evidence, on the issue of mental capacity. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 96, fn. 2 [allegations of a complaint are not evidence].) The point, even assuming it had some merit, is forfeited.

14

Windsor further relies on Vargas's declaration concerning Rodriguez's asserted understanding and voluntary execution of the arbitration agreement, and the fact Vargas explained the agreement to her in Spanish. But as stated, the trial court rejected that evidence in favor of Rodriguez's evidence, which contradicted Vargas. In short, because the record before us contains substantial evidence supporting the trial court's determination that Rodriguez lacked capacity to enter into the arbitration agreement, we affirm the order.

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

AARON, J.

15