.[Sac. No. 7427.   In Bank.   Jan. 17, 1963.]

EVELYN SOPP et al., Plaintiffs and Appellants, v. PHILLIP
R. SMITH, Defendant and Respondent.

Burton & Hennessy and Fred W. Burton for Plaintiffs
and Appellants.

Tebbe & Correia and James E. Kleaver for Defendant and
Respondent.

SCHAUER, J.—Plaintiffs appeal from a judgment for defendant, entered upon a jury verdict, in an action to recover for personal injuries allegedly resulting from a collision between an automobile driven by plaintiff Evelyn Sonn and a vehicle driven by defendant. As hereinafter appears we have concluded that the trial court did not err in denying plaintiffs' motion for a new trial, based on asserted misconduct of two jurors. The judgment should therefore be affirmed.

This appeal is presented on a clerk's transcript alone. Therefrom it appears that plaintiffs filed six affidavits in support of their motion for a new trial. Three of the affidavits were by jurors who had heard the case. That of juror Linton stated that during a recess in the trial he had gone alone in his own automobile to the scene of the accident, where he "viewed courses and distances; . . . stepped off the course allegedly taken . . . ; that he studied the gravelled area; that he drove his own auto over the routes . . . ; that he did this to check visibility; road conditions, and distances; that thereafter further evidence was taken; . . . that your affiant thereafter participated in the decision and discussion of the case in the jury room; that the first vote was ten to two for the defendant; that your affiant voted at all times for the defendant."

Juror Webb in his affidavit deposes that "after all evidence had been presented; and the respective attorneys had closed their arguments at approximately 7:00 p. m. on Saturday, April 1, 1961," he took his family for a drive the following day, to the scene of the accident; that "he viewed the distances and courses testified to by various witnesses; that at varying speeds he drove his own auto . . . and timed portions of it with a stop watch . . . along the course reportedly taken by the colliding vehicle of defendant; that the view was taken to get an idea of vision by the drivers and probable general position of autos at the time of the accident and to verify the accuracy of assertions made by counsel during the trial regarding distances and time required for the same . . . and affiants [sic] previous observation regarding alleged speeds, and distance travelled per second, courses, grades, road conditions and general physical features of the area." Affiant Webb also stated that he voted in favor of defendant.

Juror Caley deposed that both she and another juror, Mr. Carter, voted for plaintiffs upon the first ballot; that all twelve jurors "participated in the discussion preliminary to the decision."

Affidavits of each of the two plaintiffs and of their counsel

relate hearsay statements made to themselves following the trial, concerning the alleged misconduct, and further state that they knew nothing of the alleged misconduct until after rendition of the verdict.

A poll of the jury in open court at the time the verdict was rendered showed a unanimous ballot for defendant.

The trial court's order declares that plaintiffs' motion for a new trial "is denied on the sole ground that the affidavits of jurors Webb and Linton are inadmissible."

In this view the court was correct, under long-established principles. ■ As declared in *Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 772 [3] [329 P.2d 897], "It is the general rule in California that affidavits of jurors may not be used to impeach a verdict." Various examples are there given of application of the rule, including *People* v. *Evans* (1952) 39 Cal.2d 242, 250 [4] [246 P.2d 636] and *People* v. *Azoff* (1895) 105 Cal. 632, 633-635 [39 P. 59] (evidence received out of court), and *Maffeo* v. *Holmes* (1941) 47 Cal.App.2d 292-297 [1-4] [117 P.2d 948] (independent investigation by some jurors).

■ The *Kollert* case also points out (p. 773 [4a] of 50 Cal.2d) that California recognizes two exceptions to the rule, one created by statute (resort to chance, Code Civ. Proc., § 657, subd. 2), and the other by judicial decision (bias or disqualification of a juror concealed by false answers on *voir dire*), and further emphasizes that (pp. 773-774 [5]) "The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harrassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury. The court in *McDonald* v. *Pless* (1915) 238 U.S. 264, 267-269 [35 S.Ct. 783, 59 L.Ed. 1300], after discussing these policies and stating that the wrong to the individual was the lesser of two evils, concluded that as a general rule the affidavits should be excluded but that there might be instances where the rule could not be applied without 'violating the plainest principles of justice.' " Having thus expressly recognized and considered the conflicting policies, we reject plaintiffs' plea to create a further exception.

■ Nevertheless, it is urged on behalf of plaintiffs that another exception should be made by way of distinction based on the fact that here the offending jurors confessed their own misconduct whereas in at least some of the cited cases upholding the rule the prohibited affidavits were made by certain

jurors accusing *other* jurors of misconduct (see e.g., *Kollert v. Cundiff* (1958), *supra*, 50 Cal.2d 768, 772; *Maffeo* v. *Holmes* (1941), *supra*, 47 Cal.App.2d 292, 294). Not only does such a distinction appear untenable (see e.g., the following cases in which it appears that the affidavits were made by the wrong-doing jurors: *People* v. *Azoff* (1895), *supra*, 105 Cal. 632, 633; *Watson* v. *Los Angeles Transit Lines* (1958) 157 Cal. App.2d 112, 116 [2a] [320 P.2d 890] ; *George* v. *City of Los Angeles* (1942) 51 Cal.App.2d 311, 320 [10] [124 P.2d 872] ; *Snoffer* v. *City of Los Angeles* (1935) 6 Cal.App.2d 14, 16 [1] [43 P.2d 852]) ; but as in *Kollert* (p. 774 of 50 Cal.2d) we are of the view that the averments of jurors Webb and Linton in the subject case, even if taken as true, do not warrant a departure from the general rule. Polling of the jury in open court disclosed a unanimous verdict. Further, we have not been provided with a reporter's transcript and are in no position to determine whether or not the activities of the two jurors on their independent visits to the scene of the accident could have had a significant bearing on the outcome of the case. It may, however, be noted that the clerk's minutes show that at the commencement of trial all of the jurors were taken to the scene, where counsel for the respective parties indicated "points of interest to the jury."

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., and Tobriner, J., concurred.

PETERS, J.—I dissent.

The majority, following the rule of stare decisis, adhere to a court created doctrine first announced by Judge Mansfield in *Vaise* v. *Delaval* (K.B. 1785) 1 Term R. 11, 99 Eng.Rep. 944. That rule is that affidavits of jurors may not be used to impeach their verdict. The only reason given by the majority, other than stare decisis, is public policy, "at best a vague and uncertain guide" (*Miller & Lux* v. *Madera Canal etc. Co.*, 155 Cal. 59, 65 [99 P. 502, 22 L.R.A. N.S. 391]). Stare decisis is, of course, a sound doctrine, but not, necessarily, controlling. Certainly, when the original rule was court made, when the rule itself when first announced overruled a long line of prior cases, when it is not recognized or compelled by statute, when the only reason given for the original rule no longer exists, where there is no sound rule of law or policy to support it, and where the legal scholars in the field are practically unanimous in their belief that the rule is unsound,

good reason exists for abandoning the rule. (*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 218 et seq. [11 Cal. Rptr. 89, 359 P.2d 457].)

Dean Wigmore has demonstrated to a certainty that before 1785 the rule was well settled that jurors could, as to overt acts showing misconduct, impeach their own verdict. (8 Wigmore on Evidence (McNaughton rev. 1961) § 2352, p. 696.) The Dean has also pointed out that the only reason given by Judge Mansfield for adopting the new rule was his belief that under no circumstances should a witness be heard to allege his own turpitude. That doctrine, involving the admissibility of voluntary confessions, has long been overruled in practically all American jurisdictions, including California. (*Ibid.*)

There is no statutory compulsion for the adoption of the rule. The pertinent statute is Code of Civil Procedure section 657, which sets forth the causes for granting a new trial. Subdivision 1 provides in part that the trial court may grant a new trial for "Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial." Subdivision 2 provides that such new trial may be granted for "Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict . . . by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors."[1] This statute does not prohibit a reappraisal of the rule.

It is also of some importance that practically all of the legal writers in this field advocate an abolishment or limitation of it. (See 8 Wigmore (McNaughton rev. 1961) §§ 2345-2354; Morgan, *Basic Problems of Evidence* (A.L.I. 1954) pp. 71-77; Morgan and Maguire, *Cases and Materials on Evidence* (3d ed. 1951) pp. 333-336 (calling the Mansfield rule an "absurdity"); Note (1947) 47 Colum.L.Rev. 1373; Note (1959) 10 Hastings L.J. 319; Leavitt, *The Jury at Work*

---

[1]In the case here involved the majority opinion admits that the jurors involved were guilty of misconduct in seeking and securing evidence out of court. Thus, a ground for a new trial exists. The only question is can those overt acts of misconduct be proved by the affidavit of the offending jurors, obviously the best evidence available. Of course, the fact that misconduct here occurred, even if the affidavits were admissible, would not necessarily mean that a new trial must be granted. It is for the trial court to determine whether such misconduct deprived the plaintiff of a fair trial. But here the trial court denied the new trial "on the sole ground that the affidavits . . . are inadmissible."

(1962) 13 Hastings L.J. 415; Note (1925) 11 Iowa L.Bull. 268; Note (1913) 12 Mich.L.Rev. 405; Note (1925) 23 Mich. L.Rev. 550; Note (1927) 6 N.C.L.Rev. 315; Note (1949) 10 Ohio St. L.J. 262; Note (1915) 64 U.Pa.L.Rev. 86; Note (1934) 34 Yale L.J. 516. See also A.L.I. Model Code of Evidence (1942) rule 301, and the Uniform Rules of Evidence (drafted by the National Conference of Commissioners on Uniform State Laws, 1953) rules 41 and 44.[2] See also Justice Carter's dissent in *Kollert* v. *Cundiff*, 50 Cal.2d 768, 774 [329 P.2d 897]; Judge Learned Hand's opinion in *Jorgensen* v. *York Ice Machinery Corp.* (2d Cir. 1947) 160 F.2d 432, 435, cert. denied, 332 U.S. 764 [68 S.Ct. 69, 92 L.Ed. 349]; the dissenting opinion of Marshall, C.J., in *Schwindt* v. *Graeff*, 109 Ohio St. 404, 408 [142 N.E. 736]; the opinion of Cole, J., in the leading case of *Wright* v. *Illinois & Miss. Tel. Co.*, 20 Iowa 195.)

Wigmore demonstrates to a certainty that there is no reason in law or logic for continuing the rule (8 Wigmore on Evidence (McNaughton rev. 1961) §§ 2345-2355, pp. 677-717). This analysis need not be repeated here.

Iowa has taken the lead in liberalizing the Mansfield rule (*Wright* v. *Illinois & Miss. Tel. Co.*, supra). At least 12 jurisdictions, by judicial decision, have modified the strict Mansfield rule.[3] The Iowa rule is well stated in the American Law Institute's Model Code of Evidence as follows:

"Rule 301. *Testimony of Juror.*

"Whenever any act, event or condition known to a member of a petit or grand jury is a subject of lawful inquiry, any witness, including every member of the jury, may testify to any material matter, including any statement or conduct or condition of any member of the jury, whether the matter occurred or existed in the jury room or elsewhere, and whether during the deliberations of the jury, or in reaching or reporting its verdict or finding, or in any other circumstances, except that upon an issue as to the validity of a verdict or indictment no evidence shall be received concerning the effect which anything had upon the mind of a juror as tending to cause

---

[2] I have found only one author who advocates that the strict rule should be retained (Note (1955) 43 Cal. L.Rev. 729). One other author expressed some hesitation about overruling the Mansfield doctrine (Note (1954) 2 U.C.L.A. L.Rev. 278).

[3] These are listed by Wigmore (8 Wigmore on Evidence (McNaughton rev. 1961), § 2354, p. 702, fn. 1) as: The federal courts (perhaps); Florida, Iowa, Kansas, Nebraska, New Jersey, North Dakota, Ohio, Oregon, Tennessee, Texas, Washington and Wisconsin.

him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was reached."

The Iowa rule is based upon the distinction between extrinsic or overt acts which may be corroborated or disproved, such as access to improper matter or an illegal method of reaching a verdict, and intrinsic matters which "inhere in the verdict itself" and hence are known only to the individual juror, such as misunderstanding or prejudice. Because matters which "inhere" in the verdict, including the thought processes and motives of the juror in reaching his decision, are not readily capable of being either corroborated or disproved they should be excluded.

The United States Supreme Court's position on this subject is somewhat confused. In the case of *Mattox* v. *United States*, 146 U.S. 140 [13 S.Ct. 50, 36 L.Ed. 917], the liberal Iowa rule was approved and applied. However, in the later and much cited case of *McDonald* v. *Pless*, 238 U.S. 264 [35 S.Ct. 783, 59 L.Ed. 1300], the court seems to have reverted back to Mansfield's strict rule of exclusion with the modification that it is subject to departure in cases of extreme injustice. The lower federal courts understandably have wavered between these two positions but have generally admitted jurors' testimony as to "overt acts" or "extraneous matters" such as unauthorized inspections. (See discussion of cases 47 Colum.L.Rev. 1373, 1374.)

In spite of the fact that the legal scholars in this field are practically unanimous in their opinion that the Iowa rule is sound, it must be conceded that the majority of the states still adhere to the Mansfield rule. The reason for this has been several times noted. Justice Learned Hand stated it as follows: ". . . judges again and again repeat the consecrated rubric which has so confused the subject; it offers an easy escape from embarrassing choices." (*Jorgensen* v. *York Ice Machinery Corp.*, *supra* (2d Cir. 1947) 160 F.2d 432, 435, cert. denied, 332 U.S. 764 [68 S.Ct. 69, 92 L.Ed. 349].) Justice Carter agrees: "This persistence may, perhaps, be attributed to the one great difficulty with a rule that may be stated clearly and simply. When such a rule is completed and rounded, the corners smoothed and the content cohesive and coherent, it is likely to become a thing in itself, a work of art. It is then like a finely engineered bridge or a completed painting. One hates to disturb it. Even if knowledge and experience should demonstrate its obsolescence, one hates to tear it down because it has existed so long in its original design."

(*Kollert* v. *Cundiff, supra,* 50 Cal.2d 768, 774-775 (dissenting opinion).)

Generally speaking, now that the only legal reason advanced by Mansfield no longer exists, the courts cite one or more of the following reasons for continuing to invoke the strict rule of exclusion: (1) The need for stability of verdicts; (2) the need to protect jurors from fraud and harassment by disappointed litigants; (3) the desire to prevent prolonged litigation; (4) the need to prevent verdicts from being set aside because of the subsequent doubts or change of attitude by a juror; (5) the concept of the sanctity of the jury room.

Wigmore has completely demolished these arguments (8 Wigmore on Evidence (McNaughton rev. 1961) § 2353, pp. 697-699). In 47 Colum.L.Rev. 1373, 1375, it is stated in a note commenting on Learned Hand's decision in *Jorgensen* v. *York Ice Machinery Corp., supra,* 160 F.2d 432, which rejects the Mansfield rule: ". . . [S]uch a stand has long been overdue since the inadequacy of the arguments in support of the Mansfield rule has been effectively shown [citations]. It is anomalous that the best and usually the only evidence of which the case admits should be excluded [citation]. The objection that admission of this evidence would allow undue tampering with jurors is greatly exaggerated; courts in early decisions before the rule was adopted were apparently not troubled by fear of excessive jury corruption [citations]. The argument that uncertainty of jury verdicts would result from a more liberal rule of admissibility is misdirected since the acceptance of jurors' testimony does not mean that any jury irregularity warrants a new trial, but only that such evidence may be considered in determining whether or not a new trial is required [citation]. The real problem, therefore, is substantive rather than procedural; namely, what kind of jury misbehavior should be considered grounds for reversal.''

The fear that under the Iowa rule a juror might have doubts about his verdict and subsequently seek to upset it by an affidavit on motion for new trial is unfounded. This is so because a juror's testimony or affidavit is and should be admissible only when it concerns overt acts. Furthermore, admissibility of the evidence does not a fortiori mean reversal—prejudice must be proved. (See e.g., 10 Hastings L.J. 319 and 13 Hastings L.J. 415.)

Under these circumstances, the question is a very simple one. Admittedly several jurors have been guilty of misconduct in taking and securing evidence out of court. Admittedly this

is a factor that a trial court should consider on a motion for a new trial. The question is not whether there was misconduct, but how shall that admitted misconduct be shown? The trial court held, as a matter of law, that the affidavits of the offending jurors could not be considered by it. Such testimony was obviously the best evidence available on the issue. Had the wife of one of the offending jurors who accompanied him while he made the improper measurements filed the affidavit to the effect that she had observed her husband, such affidavit would admittedly have been admissible. Had a bailiff sworn to guard the jury observed the improper conduct his affidavit would be admissible. Yet here where it is admitted that misconduct occurred, the majority say that even though such misconduct may have deprived the plaintiff of a fair trial we will not permit him to show that by the affidavit of the very man that committed the overt act that constituted the misconduct. This is logically absurd. If this were sound law the majority should be willing to hold that a voluntary confession is never admissible, which was the original basis of the rule. Yet, the majority have signed many opinions holding to the contrary.

There is another phase of this problem that should be seriously considered. The jury system in civil cases is under attack from many sources. Those of us who believe in the jury system should be alert to protect that system from legitimate criticism, and to improve it where possible. We should not by judicial mandate lay down or approve a rule of law that subjects that system to legitimate criticism, if such can be avoided. To hold that a juror has been guilty of misconduct that may have affected the fairness of the verdict, but that the juror who committed the misconduct cannot testify to that fact, is certainly not to protect the jury system from legitimate criticism. Such a rule is not based on any principle of fairness, logic or reason. Such a holding gives the critics of the jury system a legitimate argument to contend that such an unfair result demonstrates one of the inherent weaknesses of that system.

I would hold that as to overt acts of misconduct a juror, on motion for a new trial, may testify to such misconduct, and that the trial court erred in excluding such testimony from its consideration. Then it would be for the trial court to determine whether such admitted misconduct was prejudicial.

I would reverse the judgment and the order denying the motion for a new trial.