[Civ. No. 26552. Second Dist., Div. Two. Mar. 11, 1963.]

SUE ORR, Plaintiff and Appellant, v. LOS ANGELES
 METROPOLITAN TRANSIT AUTHORITY, Defendant
 and Respondent.

Harney, Ford & Schlottman and Robert E. Ford for Plaintiff and Appellant.

Henry R. Thomas and Henry F. Walker for Defendant and Respondent.

FOX, P. J.—Plaintiff brought an action against defendant corporation for injuries allegedly sustained while attempting to board a public bus operated by defendant. Trial resulted in a jury verdict for defendant. Plaintiff appeals from the judgment, contending that a miscarriage of justice resulted from: (1) misconduct on the part of a juror and an agent of defendant; (2) misconduct on the part of defendant's attorney in insinuating plaintiff was accident-prone and claims-conscious and had filed other claims against defendant; and (3) errors of law on the part of the trial judge in (a) giving, and (b) rejecting certain instructions which, plaintiff asserts, resulted in misleading the jury.

Plaintiff, who had previously obtained a transfer to defendant's bus upon payment of a fare on another bus, was waiting for the bus involved in the instant action on the Wilshire side of the southwest corner of Wilshire and Fairfax in Los Angeles, on September 27, 1960. At the time, plaintiff, a woman of 69 years of age was 5 feet 4 inches tall, and weighed between 160 and 185 pounds. She had a congenitally bad left knee, having been born with a deformed knee. She had been treated for arthritis since 1952. At the time of the accident, she was carrying two shopping bags, a small package in her arm, and a purse.

At approximately 3:30 in the afternoon, defendant's bus stopped at the corner where plaintiff was waiting, which was a regular stopping point for the bus in question. Being a "zone change" stop, defendant's operator opened the rear door for departing passengers and collected zone checks from remaining passengers prior to opening the front door for incoming passengers. When the operator did open the door, about a dozen people entered the bus, after which the operator announced that he could accept no more passengers, the bus being fully loaded. At this point, plaintiff came hurrying to the bus door as it began to close as the result of the operator's pulling a lever which operated the door. Plaintiff placed one of her shopping bags on one of the steps just as the door was closing. The doors caught on the bag and they did not completely close. Plaintiff screamed to the operator that he had her bag. She was pulling on it. Hearing the screams, the operator activated the lever to open the door. As the door opened, plaintiff, who was still pulling on the bag, fell over backwards. The bus did not move during this entire incident.

Plaintiff's charge of misconduct is based on an affidavit of a juror that juror No. 1, Mrs. Gonzales, boarded a bus in the courthouse area immediately in front of Mr. Anderson, who was the operator of the bus involved in the action on trial and a witness for the defense; that as Mrs. Gonzales boarded the bus she turned to Anderson and said "I am afraid the doors will go shut on me" and laughed. Anderson also laughed. They passed the affiant who was seated just behind the bus driver. They were laughing and joking and went toward the rear of the bus. Affiant did not further observe them.

Anderson's version of this incident was that as he entered the bus, Mrs. Gonzales and some of the other jurors were near the front door starting back to their seats. Mrs. Gonzales made some offhand remark to the effect that "I had better watch out or I would get caught in the door. I smiled and said, yes and then I'll sue." Nothing further was said. The jurors, including Mrs. Gonzales, went on back and sat down and Anderson sat in the front near the driver. He further stated that he never discussed the facts of the case with any other juror.[1]

---

[1] Anderson also stated that on other occasions during the trial, he sat in the front of the bus, near the driver and some of the jurors were in the bus, toward the back. The bus drivers would inquire what he was

■ In *Kollert* v. *Cundiff*, 50 Cal.2d 768 [329 P.2d 897], the court declared (p. 772): "It is the general rule in California that affidavits of jurors may not be used to impeach a verdict." In reviewing this problem recently in *Sopp* v. *Smith*, 59 Cal.2d 12 [27 Cal.Rptr. 593, 377 P.2d 649], the court noted (p. 14) that: "The *Kollert* case also points out (p. 733 [4a] of 50 Cal.2d) that California recognizes two exceptions to the rule, one created by statute (resort to chance, Code Civ. Proc., § 657, subd. 2), and the other by judicial decision (bias or disqualification of a juror concealed by false answers on *voir dire*), and further emphasizes that (pp. 773-774 [5]) 'The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury. . . .' " After considering the conflicting policies the court refused "to create a further exception." (P. 14.) ■ The affidavits in question obviously do not come within either of the exceptions. It follows therefore that they "may not be used to impeach" the verdict.

■ We find no merit in plaintiff's charge of misconduct against defendant's counsel. She bases it on three questions asked on her cross-examination:

"Q. Mrs. Orr, you have had many falls throughout your life, have you not?" Objection was sustained.

"Q. Mrs. Orr, this is the third claim you have made against my client." Objection sustained and jury instructed "to completely disregard the question as if you had never heard it."

"Q. Mrs. Orr, did you not write on February 14, 1960 in relation to another claim—Did you not write to my client, and say, among other things—" After objection, the judge asked counsel to approach the bench. During a conference out of the hearing of the jury defense counsel indicated he was asking these questions for purpose of impeachment on the ground of prior inconsistent statement; that in a letter to his client on February 14, 1960 in regard to another injury, plaintiff had stated: "I think I will suffer untold agony the rest of my life and [it] may cause my death." Counsel wanted to compare this statement with plaintiff's

doing at court. He "would explain about the trial." He did not believe that any of the jurors heard any conversation between him and the other bus drivers.

testimony that she had no violent pain in February 1960. The court ruled that without more it was not proper impeachment. This ended the matter. On this record there was plainly no misconduct on the part of counsel in asking these questions.

Plaintiff's final contention is that there were errors of law committed by the court in the giving and rejection of instructions to the jury which were misleading and resulted in a miscarriage of justice.

Part of plaintiff's difficulty lies in the erroneous assumption that there were no fact issues as to whether plaintiff was "a paying passenger" of the defendant and that she was "a paying passenger" as a matter of law. Under plaintiff's version of the facts, her assumption would be correct. However, there was ample other testimony which, if believed, would lead to the conclusion that the relationship of passenger and carrier had not arisen, since such testimony reveals that the bus driver had taken no action indicating the immediate acceptance of plaintiff as a passenger, but had in fact indicated the contrary. (9 Cal.Jur.2d, Carriers, §22, pp. 688-689; *Riley* v. *Davis*, 57 Cal.App. 477, 481 [207 P. 699]; *Grier* v. *Ferrant*, 62 Cal.App.2d 306, 311 [144 P.2d 631]; *Lagomarsino* v. *Market Street Ry. Co.*, 69 Cal. App.2d 388, 396 [158 P.2d 982].)

Under plaintiff's testimony she was entitled to the benefit of the doctrine of res ipsa loquitur. The court gave instructions covering that doctrine which plaintiff says "were proper." But she claims that the giving of certain other instructions was misleading and confusing. We do not, however, find any justification for this criticism. Plaintiff requested the court to give BAJI 204-I in its entirety. The first and second paragraphs are simply alternate instructions relative to the beginning of the relation of passenger and carrier. The court selected the "Second Alternate"[2] as it appears in the fourth edition of BAJI. This was a choice

---

[2]BAJI 204-I. Second Alternate. "The relationship of passenger and carrier arises from agreement between the parties, usually implied in their conduct. Hence that relationship is established when a person, who intends in good faith and is prepared to become a passenger, has arrived at a place which has been designated by custom or notice as a site from which the carrier will take on passengers and, by standing alongside or near the probable stopping place of the vehicle, or otherwise, has indicated to the bus driver an intention to board the vehicle of the carrier, and the bus driver takes some action which indicates the immediate acceptance by the carrier of such person as a passenger."

for the trial judge to make. The one given was entirely proper and adequate. There is no merit whatever in plaintiff's complaint on appeal that the court should have given the ''First Alternate'' instead of the second. Furthermore, she is in no position to raise such a point since she requested the court to give the instruction that it actually did give. (*Nichols* v. *Harger-Haldeman,* 196 Cal.App.2d 77, 90 [16 Cal.Rptr. 195].)

 Plaintiff also asserts that the court erred in giving BAJI 132.1 (revised) to the effect that the law does not permit you to guess or speculate as to the cause of the accident. She says that the effect of this instruction is to emasculate the inference of the doctrine of *res ipsa loquitur.''* She misconceives the area in which this instruction applies. At some point the jury must decide what the underlying facts are as a basis for determining whether res ipsa loquitur applies, that is to say, e.g., did the motorman announce ''no more'' passengers and start to close the door after which plaintiff placed her bag on the step, or was she in the car having been accepted as a passenger and then thrown from it by a sudden lurch when it started up? The law does not permit the jury to guess or speculate as to these foundational facts. If the jury found the second hypothesis to be true it could then properly apply res ipsa loquitur without any further consideration of the challenged instruction. Thus it takes nothing whatever away from the inference of negligence which res ipsa loquitur supplies. It was therefore not error to give the instruction in question.

 The court gave BAJI No. 35-A which advised the jury that instructions on damages had been given so that all the law pertinent to the issues may be before them in the course of their deliberations. The court also gave BAJI No. 180 to the effect that giving instructions on damages must not be considered as intimating any view of the court on the issue of liability, or as to which party was entitled to their verdict. Plaintiff complains that the second instruction is argumentative. Plaintiff is unduly critical of that instruction. It has been recognized as a proper statement of the law for many years. Plaintiff's real contention is that there was repetition. While there is some repetition it is not significant since the court further told the jury: If in these instructions any rule, direction or idea be stated in varying ways, no emphasis is intended by me, and none must be inferred by you.''

Finally, plaintiff complains that the court did not give BAJI No. 21-B (demonstration not required). That instruction has been superseded by No. 21 (revised) which was requested by both sides and given by the court. This instruction was entirely adequate. There is no merit in plaintiff's contention.

Plaintiff's complaint about other instructions is more synthetic than real and does not justify comment.

The plaintiff had a fair trial.

The judgment is affirmed. The appeal from the order denying a new trial is dismissed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied April 1, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1963.