[Civ. No. 23942.   First Dist., Div. Four.   Dec. 20, 1968.]

WILLIAM VAN ZEE, JR., Plaintiff and Appellant, v. BAY-VIEW HARDWARE STORE et al., Defendants and Appellants.

Hoberg, Finger, Brown & Abramson and James D. Mart for Plaintiff and Appellant.

Berry, Davis & McInerney, Berry, Davis, Lewis & McInerney, Arnold B. Haims, Lamb & Glynn and Cyril Viadro for Defendants and Appellants.

DEVINE, P. J.—Plaintiff was awarded judgment of $34,000 on a verdict because of injuries to his hand which

were caused by the explosion of an aerosol paint can. The action was tried on the theories of strict liability and breach of warranty of fitness. Defendants at trial, against both of which judgment was rendered, were Bayview Hardware Store, which sold the can to plaintiff, and Zynolyte Products Co., Inc., purveyors of paint, which sold the can to Bayview Hardware.[1]

The trial judge made an order granting defendants' motion for new trial. From this order, plaintiff, William Van Zee, appeals. Two grounds for the order (together with the judge's reasons) are set forth in the order: misconduct of the jury and insufficiency of the evidence. Excessive damages were not given as a ground for the order. Plaintiff's occupation was that of a registered manipulator of safes and locks; wherefore, injuries to his hand were a serious matter.

I. MISCONDUCT OF THE JURY

The court's statement of misconduct is this:

"Misconduct of the jury in that the foreman of the jury, Edward F. Masuoka, during the course of the trial, and prior to the deliberation of the jury, personally conducted experiments in the basement of his home, utilizing an aerosol can of spray paint similar to the one involved in this case;

"That during the subsequent deliberations of the jurors upon their verdict in this case, the said foreman of the jury discussed with his fellow jurors the results of his said personal experiments; that the said jurors were influenced thereby in arriving at their verdict, to the prejudice of the rights of the said defendants."

Masuoka's conduct had been reported, by the one juror who had dissented from the verdict, to an attorney for one of the defendants after the verdict was rendered. Masuoka described his experiment in his own affidavit. Several jurors submitted affidavits[2] stating, in various ways, that the talk in the jury room about the experiment had been made after the issue of liability had been determined and was of no consequence to the jurors in arriving at their verdict.

Misconduct of the jury is stated to be a cause for new

---

[1] There was a dismissal, upon settlement, of the causes against the manufacturer of the can and against the company which filled the can with Zynolyte's paint, placed the valve and tubing in the can and sealed and tested the can. Nonsuit on a negligence count was granted as to the respondents herein, and the case proceeded against them on the warranty and strict liability counts.

[2] We use the term "affidavit" throughout as including declaration under penalty of perjury.

trial, if it materially affects the substantial rights of the moving party, in Code of Civil Procedure section 657, subdivision 2. But the same subdivision provides that the misconduct may be proved by affidavits of the jurors in one instance: when there has been resort to chance. To this single statutory exception the courts have added another: falsity of answers given by a venireman at *voir dire* may be shown by jurors' affidavits. (*Kollert* v. *Cundiff*, 50 Cal.2d 768, 773 [329 P.2d 897].) But these two are the only cases in which jurors may impeach their verdict by affidavit. (*Sopp* v. *Smith*, 59 Cal.2d 12 [27 Cal.Rptr. 593, 377 P.2d 649]; *Kollert* v. *Cundiff*, *supra*; *Maffeo* v. *Holmes*, 47 Cal.App.2d 292 [117 P.2d 948].)

Jurors may not impeach their verdict, even by affidavits of their own misconduct. (*Sopp* v. *Smith*, *supra*, pp. 14-15, and cases cited therein.) Misconduct of jurors may be proved by affidavits of other persons. (*Anderson* v. *Pacific Gas & Elec. Co.*, 218 Cal.App.2d 276, 280 [32 Cal.Rptr. 328].) Thus, for example, in the case before us, someone might have seen the juror who was conducting the experiment and have made this fact known to the judge. But the only proffered evidence of the foreman's experiment and his talk about it with other jurors, was the jurors' affidavits, together with an affidavit of a defense attorney that report had been made to him by the one juror. This affidavit, setting forth the extrajudicial statement of a juror, was equally useless for the purpose of impeaching the verdict. (*People* v. *Yeager*, 194 Cal. 452 [229 P. 40]; *People* v. *Giminiani*, 45 Cal.App.2d 535, 540 [114 P.2d 392]; *People* v. *Cahan*, 141 Cal.App.2d 891, 902-903 [297 P.2d 715]; *People* v. *Schmitt*, 155 Cal.App.2d 87, 117 [317 P.2d 673].)

Respondents cite to us, as they did to the trial judge, the 1896 case of *People* v. *Conkling*, 111 Cal. 616, 627 [44 P. 314]; in which case two jurors had performed an experiment with a rifle as to the distance powder marks could be carried. But it is fairly clear that the affidavits were not those of jurors, because they are described as ''affidavits of certain parties,'' which is not apt language for describing affidavits of jurors.

In *Kollert* v. *Cundiff*, *supra*, the foreman, during a night recess, had investigated traffic lights at the intersection where the accident occurred; and in *Sopp* v. *Smith*, *supra*, jurors had made experiments in driving automobiles at varying speeds (one of them using a stop watch) along the course which had been taken by the defendant. Their affidavits telling of these activities were held inadmissible for the purpose of impeaching the verdict.

■ Respondents seek to justify the admission of the affidavits, not only on the *Conkling* case, but also on the theory that the juror who conducted the experiment and who later became foreman had concealed his true intent at *voir dire,* in that he answered falsely the question whether he would decide the case solely on the evidence and the law. (The question was not directly put to him but was carried over by relation of the question and answer of another juror.) ■ In order to sustain the admissibility of the affidavits on this theory, the misconduct must exist at the very time of the *voir dire.* (*Winnigar* v. *Bales,* 194 Cal.App.2d 273 [14 Cal.Rptr. 908].) ■ The proposition cannot be sustained in this case. Code of Civil Procedure section 657 now requires the judge to state his reasons for granting a motion for new trial. The judge did state his reasons, and we have quoted them above, for granting the motion because of misconduct. He said nothing about a false answer at the time of *voir dire.* The reason why he did not do so is plain. There was no affidavit about the juror's state of mind at the time of *voir dire;* there was an affidavit by the juror that he answered the questions truthfully. The *voir dire* was on March 3, 1966; the experiment was done on March 14, 1966. Testimony that only heating would have caused the explosion was not before the jury until March 10, 1966. It is incredible that the juror had formed the intention to perform the experiment at the time of *voir dire* and that he answered untruthfully the question put to him.

The case is to be distinguished from those cited by respondents: *Estate of Mesner,* 77 Cal.App.2d 667 [176 P.2d 70], in which a juror had concealed the low opinion which he had of an attorney who was the draftsman of the will in question; and *Noll* v. *Lee,* 221 Cal.App.2d 81 [34 Cal.Rptr. 223], in which a juror had decided, even at the time of *voir dire,* that he was going to research the law himself and to instruct his fellow jurors thereon.

The order granting motion for new trial cannot be sustained on the ground of misconduct of the jury.

## II. SUMMARY OF THE EVIDENCE

Plaintiff testified that on the day of the accident he had completed repairs on a safe door, and had only the painting to do. He had purchased several cans of paint two days before at Bayview Hardware Store. He had stored the paint, in its bag, on the shelves near the work bench. There is no heat source in the immediate vicinity of the shelves. The can he

selected for use that day had not been previously used. Just as he picked up the paint can, the phone rang, and he entered the office to answer it. He set the can on the desk near the phone. There was a small gas heater with a flat top near the desk, the pilot light of which was on at all times. It is uncertain whether the heater was fully on at the time. The telephone conversation was short—about half a minute or so. Plaintiff then picked up the can and started into the shop.

It is conceded that the can exploded. A customer was entering the store almost at the moment of the incident, and not only saw paint splattered all over plaintiff's person but also heard the noise of the explosion.

Plaintiff produced a structural engineer, Mr. George Washington, whose opinion was that the defect in the can which caused the explosion was that of the seam of the can, in these respects: The seam was composed of tabs which had been crimped together and bound by solder. It was possible, the expert testified, that in the process of crimping and flattening the tabs under great pressure one or more of the tabs were weakened. He testified that solder tends to creep, and that as this can had been manufactured some two years prior to the accident, this creep may have been a cause of the failure. Further, he testified that the interdependence of the two fastening methods, crimping and soldering, results in a very questionable basic design, and that there are gaps in the distribution of the solder. The result of failure under pressure would cause the seam to tear apart, the top and bottom of the can would fly off, and there would be general disintegration of the can structure in the matter of a moment.

The testimony of the expert, however, could have been deemed unconvincing by the trial judge in his review of the evidence. The expert is a structural and civil engineer, but he has taken no courses in metallurgy. He had testified in other cases involving elevator parts and stairways. The texts which he relied on in testifying about the metals involved had made no specific references to aerosol cans. He did not know the composition of the solder which had been used. He made no test of the pressure which might cause buckling of the top or bottom of the can, a subject on which there was much testimony by the opposing expert. He had not checked with other manufacturers of aerosol products. He did not look for solder creep in other cans of Zynolyte which he had purchased in 1963 at Bayview Hardware after the accident. When asked what would cause an increase in the pressure of the can, he replied that he did not know, that he had heard that heat on

the can would cause additional pressure but he was not conversant with that.

The expert for the defense, Mr. Lewis Lawson, is an organic chemist who has been working with low pressure aerosol containers for about 18 years. His company was the manufacturer of the completed product. American Can Company or Continental Can Company supplied the cans; Zynolyte supplied the paint and marketed the product; the assembling of the can after adding freon gas and a solvent and attaching the valve was done by Lawson's company. Lawson testified that if there were cold flow of the solder (which he regarded the same as Mr. Washington's "creep"), pressure within the can would dissipate; that solder in a 130 degree bath over weeks or months would start getting spongy and the result would be simply a loss of pressure through pinholes. He testified that there is a direct relevancy between heat and pressure in the can, and that the only way in which to increase pressure is to increase the heat. He testified that when he examined the can after the accident the distortion of the interior was inward, not outward; wherefore, he was of the opinion that someone had opened the can physically. He testified that it would be impossible for the can to break in such a way that the seam, bottom and top would all be affected. The top and bottom of this can were distorted. It was his conclusion that the can had been heated before the explosion. On cross-examination, he conceded that some cans would become distorted in the 130 degree bath in which all cans were put, but he testified that these would not then go through rollers and rolls which were adjusted for the size of the cans at later stages. He testified that heating of the can, against which there is warning, does produce a finer spray.

When the witness was asked if he were not making an assumption all the way through, that the can was not a defective one when supplied, he answered affirmatively. In response to questions about the possibility that a defective can could go through the whole process undetected, he replied that of the twenty million cans theretofore assembled there had been a single explosion (except under controlled conditions for testing pressure when explosion was induced by heat).

The evidence on the subject of possible heating of the can, other than Lawson's testimony that it must have been heated in order to have blown out in the way that it did. is: 1) plaintiff's testimony that he had set the can on a desk, as described above; 2) his employer's testimony that the heater was used very little because it emitted smoke and fumes, and

he smelled no fumes on the morning of the accident; 3) Mrs. Van Zee's testimony that her recollection was that the heater was not on, although at her deposition she had said she had no idea whether it was or not; 4) the fact that plaintiff suffered no burns, and testified that he had picked up the can which, if it were heated to the bursting point, would be at 250 degrees, according to the testimony of Lawson; 5) once the can had burst, however, the escaping gas would have a cooling effect.

### III. SPECIFICATION OF THE JUDGE'S REASON CONCERNING INSUFFICIENCY OF THE EVIDENCE

To support the granting of the motion for new trial on the ground of insufficiency of the evidence, as required by section 657 of the Code of Civil Procedure, the judge gave the following specification: ''That the evidence is insufficient to support the verdict in that the evidence does not establish that the Zynolyte aerosol paint can was defective at any time prior to the delivery of said can to the possession of the Plaintiff.''

Appellant makes two challenges to this specification: first, that it is, as a matter of law, erroneous; and second, that it does not comply with the demands of section 657.

### A. *Asserted Deficiency, As a Matter of Law*

Appellant argues that the specification is defective, as a matter of law, because it says that the can was not ''defective at any time *prior to the delivery*'' to appellant (italics added). This reference to a time prior to delivery, argues appellant, might exonerate at least one defendant if the can was not defective when it was delivered by Zynolyte to Bayview Hardware, if it became defective through deterioration. The law is that appellant is entitled to recover if the can was defective when the product was put in the hands of the consumer. (Rest.2d Torts, § 402 A.) We are sure that the trial judge was referring to the whole period up to the very moment of delivery to the customer. This follows from the whole tenor of the trial and from the briefs submitted to the trial judge on hearing of the motion for new trial. Besides, the judge gave two instructions relating to possible defects in the can *at the time of sale*, one at the instance of plaintiff, one proposed by defendants. Surely the judge would not direct the jury's attention to the time of sale and have in mind some other unspecified time for his own consideration in deciding the motion for new trial.

B. *Asserted Insufficiency of the Specification*

We agree with appellant that the specification of the *reason* for granting new trial on the *ground* of insufficiency of the evidence is inadequate and that it does not satisfy the purposes of section 657 of the Code of Civil Procedure. It is true that it states the failure to prove the main ultimate fact in the case. The burden of proving that the can was defective rested upon plaintiff. (*Gherna* v. *Ford Motor Co.*, 246 Cal. App.2d 639, 650 [55 Cal.Rptr. 94]; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].) But the *reason* given is hardly more definite than is the stated *ground*.

In *Mercer* v. *Perez*, 68 Cal.2d 104, 116 [65 Cal.Rptr. 315, 436 P.2d 315], it was held that "if the ground relied upon is 'insufficiency of the evidence' the judge must briefly recite the respects in which he finds the evidence to be legally inadequate; no other construction is consonant with the conclusive presumption on appeal that the order was made 'only for the reasons specified.' Phrasing the requirement in terms of the codification of the trial judge's power in the second paragraph of the amendments [Stats. 1965, ch. 1749, p. 3922], such an order must briefly identify the portion of the record which convinces the judge 'that the court or jury clearly should have reached a different verdict or decision.' "

The quoted portion of the decision of the Supreme Court has not been followed literally in certain cases of the Courts of Appeal. In *Matlock* v. *Farmers Mercantile Co.*, 258 Cal. App.2d 362 [65 Cal.Rptr. 723], it was held a sufficient specification, under the facts of the case, for the judge to say that a driver "was negligent in the manner in which he drove the defendant's automobile at the time and place of the accident involved in this case" (p. 365). But in that case, the defendant had been driving at 40 miles an hour without headlights in a fog when the visibility was less than 500 feet, in plain violation of section 24400 of the Vehicle Code. The judge's reasoning was obvious. In *Funderburk* v. *General Telephone Co.*, 262 Cal.App.2d 869 [69 Cal.Rptr. 275], an order granting new trial to plaintiff was sustained where the reason given for insufficiency of the evidence to support the verdict in favor of defendant was that "the defendant driver was negligent in the operation of the vehicle, contrary to the finding by the jury" (p. 871). But the defendant's truck had hit plaintiff while he was in a marked cross-walk, and again the reasoning was unmistakable. And in *Kincaid* v.

*Sears, Roebuck & Co.,* 259 Cal.App.2d 733 [66 Cal.Rptr. 915], a malicious prosecution case, it was sufficient for the judge to say that the " 'evidence does not establish by a preponderance thereof that the defendant did not have probable cause for the arrest of plaintiff' " (p. 736). The facts constituting probable cause for the arrest were clear, as recited in the opinion.

It was pointed out in *Mercer* that no hard and fast rule can be laid down, and the cases cited above were simply cases in which it could readily be ascertained why the judge had made his order.

Before explaining why we deem the reason specified in this case to be inadequate, we acknowledge the difficulty presented to the trial judge in specifying his reason for granting a new trial when the ground is insufficiency of the evidence. The trial judge surely should not be burdened with giving a comprehensive review of the evidence. He should not have to point out flaws in the testimony of particular witnesses. But when the ground for granting the new trial is insufficiency of the evidence, it is usually more important that a clear and concise statement of the judge's reasons be given than when there are other grounds for the order. Even before the 1965 amendments to section 657, if, for example, the judge believed he had given an erroneous instruction and therefore the ground was error of law, usually this was made clear to the appellate court in one way or another. But where the ground is insufficiency of the evidence, the purposes of the statute frequently can be satisfied only if the reviewing court and the parties to the action are given more than a statement which declares that they have failed to prove the ultimate fact which they were required to establish.

In the case before us, plaintiff presented the testimony of Mr. Washington for the proposition that the seam of the can was of questionable construction and was subject to deterioration with the passage of time. The trial judge may have found this testimony unconvincing. If so, it would take a sentence or two to declare this. Indeed, if the judge had said so, we would have no difficulty, after our review of the record, in sustaining this as one reason for the order, but not one sufficient by itself to justify the order.

For the expert testimony is not all that there is to the case. It has been conceded by defendants throughout that the can did explode. If it was not because of failure of the seam, the question remains: why did it explode? Plaintiff gave an account of absence of misuse of the can from the time of

purchase, to which we shall advert. Plaintiff's case could be proved by circumstantial evidence. To establish liability of defendants, plaintiff need only establish that he was injured while using the product as it was intended it should be used. (*Greenman* v. *Yuba Power Products Co.*, 59 Cal.2d 57, 64 [27 Cal.Rptr. 697, 377 P.2d 899, 13 A.L.R.3d 1049].) The jury could have found liability without reference to Washington's testimony, if they believed that appellant had not misused the product and if they found the explanation by defendants unsatisfactory. Or, the jury could take the combination of expert testimony, together with its inferences. (See *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344].) We cannot tell whether the judge's reason was based on his estimation of Washington's testimony only, or on his appraisal of the other circumstances of the case as well. The defense undertook to explain the explosion by the testimony of Mr. Lawson. The explanation was positive, and, indeed, emphatically expressed by the expert: the can had been heated; it could not have exploded in the way that it did unless it had been heated. In fact the witness testified that the bursting point would be only at a temperature of 250 degrees. His testimony possibly is subject to the inference that an explosion would take place at a somewhat lower level. But the whole thrust of his testimony was that the can would not have exploded unless it were made subject to heat very much higher than that of room temperature. Here, again, if the judge accepted this testimony, the fact could be stated as a reason for the order. This would bring up a decision on the next point, namely, whether the can had been heated by the plaintiff. (It is not suggested by respondents in their briefs that anyone else heated the can since the time of its purchase from Bayview Hardware.)

Plaintiff's testimony is to the effect that he did not heat the can. If the judge believed that he did, or if he had such doubt about plaintiff's use of the can as to dispel an inference of defect in the product, this, too, could be stated briefly. This would narrow the scope of appellate review to this question: Is there, as required by the concluding words of Code of Civil Procedure section 657, "substantial basis in the record for any of such reasons"? In particular, the review might be narrowed to consideration of the circumstantial evidence about heating of the can. Finally, we should observe, in deference to the distinguished trial judge, that all of the proceedings in his court were concluded about a year and a half

before the early 1968 decision in *Mercer* v. *Perez,* with which we deem our decision ought to conform.

Further, we deem it appropriate to say that we have made an exhaustive search of the entire record to see if there were clear-cut evidence which would unmistakably show the reason which was given to support the order, as in the cases described above. Having made this search, we fear we are in the position in which reviewing courts were before the amendments to section 657, as ·described in the *Mercer* case: ''The appellate court could find itself considering alleged insufficiencies totally unrelated to˙those relied upon by the trial judge; and without further elucidation of the order, the principle that an abuse of discretion cannot be found in cases in which the evidence is in conflict and a different verdict could have been reached (*Hames* v. *Rust* (1939) 14˙Cal.2d 119, 124 [92 P.2d 1010], and cases cited) 'constitutes an iron curtain, cutting off any adequate review of whether or not there was *any* reason for the trial judge to set aside the verdict of the jury and grant a new trial.' (Italics added.) (*Coppo* v. *Van Wieringen* (1950) 36 Wn.2d 120 [217 P.2d 294, 297].) '' (68 Cal.2d at p. 114.)

IV. CROSS-APPEALS

Defendants have cross-appealed from the judgment rendered in plaintiff's favor if the order granting a new trial is reversed. The *only* issue presented in the cross-appeals is the contention, in the brief of respondent Bayview Hardware, that the court committed prejudicial error in permitting plaintiff, over objection, to demonstrate before the jury his ability to manipulate safes. No authority in support of this argument is cited. The point is without merit.

The order granting the new trial is reversed, and˙on the cross-appeals the judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

The petition of appellant Zynolyte Products Co., Inc. for a hearing by the Supreme Court was denied February 13, 1969. McComb, J., was of the opinion that the petition should be granted.