[Civ. No. 1326. Fifth Dist. May 5, 1971.]

CONTINENTAL DAIRY EQUIPMENT COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
TONY LAWRENCE, Defendant, Cross-complainant and Respondent.

380

## COUNSEL

Jacobus, Isham & Humpal and Richard B. Isham for Plaintiff, Cross-defendant and Appellant.

Carl P. Evans for Defendant, Cross-complainant and Respondent.

## OPINION

**BROWN (G. A.), J.**—Appellant, Continental Dairy Equipment Company, a California corporation (plaintiff and cross-defendant) sued respondent Tony Lawrence (defendant and cross-complainant) for the balance due for the sale and installation of certain milking equipment. Tony Lawrence cross-complained for damages. The jury returned a general verdict against appellant and for respondent on the complaint and cross-complaint and assessed cross-complainant Lawrence's damages at $50,000. Continental Dairy Equipment Company, a California corporation, appeals from the judgment after denial of a new trial motion.

In summary, the issues raised are whether or not the verdict as to liability, proximate cause and damages is supported by the evidence, questions involving alleged procedural errors which occurred during the taking of evidence at the trial and, finally, a contention that the trial court improperly refused to consider affidavits of jurors upon appellant's motion for a new trial.

Appellant was engaged in supplying, installing and servicing dairy equipment. Respondent was a dairyman.

On December 13, 1967, appellant filed its action against respondent for $4,623.31, alleging three causes of action which were breach of contract, account stated and open book account. Appellant had furnished to re-

spondent milking equipment and services for the installation and maintenance of the same over the period commencing approximately July 20, 1965, through approximately August 4, 1966.

Respondent answered the complaint, alleging a failure of consideration, and cross-complained for general damages in the amount of $57,442 and special damages in the sum of $6,450.[1]

Respondent cast his cross-complaint in three causes of action. In the first he alleges that the appellant "so negligently, carelessly and wrongfully, designed, assembled, installed, equipped, supplied, furnished, serviced, repaired, inspected, connected, maintained and set up said dairy barn milking system, equipment and supplies and component parts thereof, so as to cause said dairy barn milking system, equipment and supplies, to be defective, dangerous and unfit for its intended use." The second cause of action is based upon misrepresentation and the third upon breach of implied warranty of fitness for intended use and of merchantable quality.

Respondent's position at the trial was that the inadequacies and defects in the milking system and other conduct on the part of the appellant caused a mammary disease known as Mastites which in turn proximately resulted in the death of some dairy cows, excessive culling and replacement of dairy cows, loss of milk production and medical and drug expense incurred to treat the cows; he also claimed the cost of replacing a portion of the equipment installed by the appellant.

Appellant's effort on this appeal consists primarily of an attempt to re-argue the evidence introduced at the trial and to set forth the portions thereof most favorable to it. The transcript of the evidence is voluminous. The parties, both in their briefs and at the oral argument, have discussed the evidence in considerable detail. We in turn have reviewed the record in its totality, and in doing so have kept in mind the familiar principles governing an appellate court's authority on appeal. ■ This court's power begins and ends with a determination of whether or not there is substantial evidence to support the conclusions of the trier of fact (*Nelson* v. *Reisner,* 51 Cal.2d 161, 164 [331 P.2d 17]; *Karas* v. *Karas,* 107 Cal. App.2d 135 [236 P.2d 415]). And if there is such substantial evidence, we must affirm even though we may feel the verdict is against the preponderance of the evidence. (*Callahan* v. *Gray,* 44 Cal.2d 107 [279 P.2d 963]; *Owens* v. *White Memorial Hospital,* 138 Cal.App.2d 634 [292 P.2d 288].) All legitimate and reasonable inferences must be resolved in favor of the respondent in support of the verdict, and the appellate court will not substitute its judgment for that of the jury (*Kallman* v. *Henderson,*

---

[1] This is the amount as it is alleged in the amended cross-complaint.

234 Cal.App.2d 91 [44 Cal.Rptr. 108]; *Romeo* v. *Eustace,* 101 Cal.App.2d 253 [225 P.2d 235]; *Albaugh* v. *Mt. Shasta Power Corp.,* 9 Cal.2d 751 [73 P.2d 217]).

■ While there is substantial evidentiary conflict on essentially all issues, an independent review of the record in a light most favorable to respondent satisfies us that there is ample evidence to support the verdict of the jury, and we cannot accept appellant's view that the evidence supporting the verdict is contrary to established principles of physical science, inherently improbable or patently false. Since we have arrived at this conclusion, we see no useful purpose in extending this opinion by a detailed discussion of each of the minute points wherein appellant claims the evidence is insufficient to support the verdict.

Further, it is to be noted that the trial judge independently reviewed the evidence upon the new trial motion, including the amount of damages, and concluded that the verdict is supported. ■ His determination is entitled to great weight by this court (*Torres* v. *City of Los Angeles,* 58 Cal.2d 35 [22 Cal.Rptr. 866, 372 P.2d 906]; *Graf* v. *Marvin Engh Truck Co.,* 207 Cal.App.2d 550 [24 Cal.Rptr. 511]; *Sturges* v. *Charles L. Harney, Inc.,* 165 Cal.App.2d 306 [331 P.2d 1072]).

■ There appears to be some merit to appellant's contention of lack of evidence to support the second cause of action which is predicated upon allegations of misrepresentation. However, appellant has not pointed to the evidence demonstrating support for this contention as is required (*Owens* v. *White Memorial Hospital, supra,* 138 Cal.App.2d 634 at p. 638). At any rate, the general verdict rule applies since there is substantial evidence to support the verdict on the two theories of negligence and implied warranty, and these two theories are unaffected by reversible error (*Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359 [317 P.2d 601]; *Rawlings* v. *Harris* (1968) 265 Cal.App.2d 452 [71 Cal.Rptr. 288]; *Posz* v. *Burchell,* 209 Cal.App.2d 324 [25 Cal.Rptr. 896]).

Appellant asserts the existence of several procedural prejudicial errors committed by the trial court in the taking of oral evidence, which appellant groups in the following classifications: (1) undue restriction of appellant in the examination of witnesses, both on direct and cross-examination; (2) improper examination of witnesses by respondent, both on direct and cross-examination; (3) inappropriate use of hypothetical questions; and (4) respondent's use of improperly phrased objections and interjection of argumentative matter preceding the trial court's ruling on certain objections.

In dealing with these several areas of appellant's concern, it must be

kept in mind that this was not a short trial and that voluminous evidence was taken. The trial lasted for six days before a jury, during which 18 witnesses testified and 41 exhibits were introduced; and, as we have already stated, there was substantial support for the jury's verdict. Certain well enunciated principles should also be kept in mind, some of which may be summarized as follows: ■ The trial judge has very broad discretion in admitting or not admitting evidence (Evid. Code, § 352) and in regulating the scope of cross-examination (*Garcia* v. *Hoffman,* 212 Cal. App.2d 530 [28 Cal.Rptr. 98]); injury is not presumed from error but must be affirmatively shown (*Hoyt* v. *Los Angeles Metropolitan Transit Authority,* 210 Cal.App.2d 534 [26 Cal.Rptr. 666]), which principle is also embodied in the harmless error rule (Cal. Const., art. VI, § 13; Evid. Code, § 353, subds. (a) and (b)). The judgment will not be reversed unless the court can say the result would have been different had the error not been made (*Davidson* v. *De Sousa,* 20 Cal.App.2d 311 [66 P.2d 740]; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]).

While we believe the trial court should have permitted some of the questions posed by appellant and referred to in his brief, in light of the above principles we find no error justifying a reversal. Likewise, we find no prejudicial error in the questioning by respondent of witnesses Semas, Wright and Ross.

In view of the fact that the criticized hypothetical question asked by respondent was posed of an expert witness on cross-examination, there was no error in permitting the question (*People* v. *Busch,* 56 Cal.2d 868 [16 Cal.Rptr. 898, 366 P.2d 314]; *Brown* v. *Affonso,* 185 Cal.App.2d 235 [8 Cal.Rptr. 156]).

■ Respondent's counsel's trial technique of arguing the merits of the case upon the pretense of stating a legal objection to offered evidence and of making gratuitous remarks such as, "Your Honor, I have been very patient"; "I suggested as a trick question, Your Honor"; "I object, Your Honor. I have allowed counsel wide latitude but—"; and "I think I am about to cite counsel for prejudicial error" are not to be condoned as proper conduct, and the judge should have admonished counsel and stopped such conduct forthwith, and, in addition, should have advised the jury to disregard the statements (*Sabella* v. *Southern Pac. Co.,* 70 Cal.2d 311 [74 Cal.Rptr. 534, 449 P.2d 750]). However, in order that appellant may take advantage of this misconduct on appeal, he should have made a proper request that the jury be admonished, which he did not do (*Sabella* v. *Southern Pac. Co., supra,* 70 Cal.2d 311 at p. 318). Further, we are of the opinion that the conduct was not sufficiently serious to have affected the result or to justify a reversal.

■ In support of its motion for a new trial, appellant submitted numerous affidavits of jurors. These affidavits in summary stated that certain of the jurors did not review all of the documentary evidence, that some were confused about the evidence and did not understand all of it; that the jury foreman failed to be a leader; and an individual, who was described as a short mechanic or service station operator and who had been seated in the back row, took over and dominated the jury with his arguments for respondent's position; that several of the jurors wanted to get it over with and to go home since they were tired due to the length of the trial; that some of them disagreed with the verdict (we note parenthetically, however, that they voted 11 to 1 for the verdict); that one went by what the lawyer said and did not independently analyze the evidence and eventually just agreed with what everyone else wanted; there was a lot of arguing about how much money to give Mr. Lawrence; and that all of the jurors wrote on a separate piece of paper who they were for, and Lawrence won.

In ruling upon the motion for a new trial, the trial judge's memorandum of decision stated in part: "The declarations and statements submitted by Plaintiff and Cross-Defendant did not show any prejudicial or overt misconduct on the part of any juror or any other person connected with the above-entitled case or the trial of the issues thereof and in the opinion of the Court are legally insufficient to satisfy the Motion for New Trial as stated by counsel for the Defendant and Cross-Complainant and the Motion to Strike should therefore be granted. However, even giving said affidavits, declarations and statements full consideration, the Court is still of the opinion that it should not and cannot grant a new trial.

"Plaintiff and Cross-Defendant's Motion for a New Trial is hereby denied and Defendant and Cross-Complainant's Motion to Strike the Affidavits, Declarations and/or Statements of Jurors In Support of Plaintiff's Motion for New Trial be and the same is hereby granted."

Thus, it appears that the court gave consideration to the contents of the affidavits in denying the motion even though it granted the motion to strike them from the record. In our opinion the ruling was proper.

■ Evidence Code section 1150, subdivisions (a) and (b),[2] and the

---

[2]"(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to

case of *People* v. *Hutchinson,* 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], undoubtedly broaden the rule regarding the admissibility of jurors' affidavits to prove overt acts objectively ascertainable of such character as to have likely influenced the verdict improperly. But the *Hutchinson* case and subsequent cases carefully preserve the distinct distinction prescribed in Evidence Code section 1150. In *Hutchinson,* at pages 349-350, the court explains: "This distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved, has been advocated by commentators (see e.g., 8 Wigmore, Evidence (McNaughton rev. 1961) §§ 2349, 2352-2354; Note (1956) 56 Colum.L.Rev. 952; Note (1959) 10 Hastings L.J. 319; Note (1956) 54 Mich.L.Rev. 1003; Note (1948) 47 Mich.L.Rev. 261), adopted by the Uniform Rules of Evidence (rules 41 and 44) and the Model Code of Evidence (rule 301), and has been the basic limitation on proof set by the leading decisions allowing jurors to impeach their verdicts.

". . . . . . . . . . . . . . . . . .

"Although section 1150 does not alter the rule against impeachment of a verdict by the jurors, its limitation of impeachment evidence to proof of overt conduct, conditions, events and statements, as suggested by the commentators, vitiates the major policy arguments supporting the common law rule. (See *Sopp* v. *Smith, supra,* 59 Cal.2d 12, 15-20 [27 Cal.Rptr. 593, 377 P.2d 649] (dissenting opinion, Peters, J.).) This limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent."

The holding in *Hutchinson* was explained in the case of *Putensen* v. *Clay Adams, Incorporated,* 12 Cal.App.3d 1062 at pages 1082-1083 [91 Cal. Rptr. 319] (per Molinari, J.): "The only showing of prejudice attempted by plaintiff is through the jurors' affidavits aforementioned. Affidavits of jurors may be used to impeach their verdict only in certain limited situations. Such affidavits may be used to show that the verdict was reached by lot or chance and to show that one or more of the jurors concealed bias or prejudice on *voir dire. (People* v. *Hutchinson,* 71 Cal.2d 342, 346-348 [78 Cal.Rptr. 196, 455 P.2d 132].) They may also be used to impeach a verdict under the circumstances provided for in section 1150 of the Evidence Code. That section provides in subdivision (a) thereof as follows: 'Upon an inquiry as to

assent to or dissent from the verdict or concerning the mental processes by which it was determined.

"(b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.' (See *People* v. *Hutchinson, supra,* at p. 349.)

"*Hutchinson,* in interpreting Evidence Code section 1150, holds that the conduct, conditions or events which are alleged to have influenced the jury improperly must consist of overt acts which are objectively ascertainable, i.e., influences which are open to sight, hearing and other senses and thus subject to corroboration. (At pp. 349-350.) *Hutchinson* makes it clear, however, that a verdict may not be impeached by affidavits whose effect is to prove the subjective reasoning processes of the juror which can be neither corroborated or disproved. (At pp. 349-350.)" (See also *People* v. *Stevenson,* 4 Cal.App.3d 443 [84 Cal.Rptr. 349].)

██ We hold that the statements of the jurors contained in their affidavits dealt with and had the effect of proving the mental processes or reasons and subjective considerations which influenced their verdict and did not constitute competent evidence to impeach the verdict. If these types of allegations were permitted to impeach a jury verdict, there probably would be few verdicts which would not be subject to attack. The necessity of insuring the stability of jury verdicts and the protection of jurors against harassment compels an opposite conclusion.

The judgment is affirmed.

Stone, P. J., and Gargano, J., concurred.